**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DARRIN LITTLE, | ) | |
|     *Plaintiff*, | ) | |
| | ) | 3:24-CV-836 (OAW) |
|     v. | ) | |
| | ) | |
| R & L CARRIERS, INC. and R & L | ) | |
| CARRIERS SHARED SERVICES, | ) | |
| LLC, | ) | |
|     *Defendants*. | ) | |

<u>**RULING ON DEFENDANTS' MOTIONS TO DISMISS**</u>

This employment action is brought by Plaintiff Darrin Little against R & L Carriers Shared Services, LLC ("Shared Services") and R & L Carriers, Inc. (collectively "Defendants"). Plaintiff alleges he experienced workplace discrimination based on his race and disability and seeks relief under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et seq., the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a–60 ("CFEPA"), and section 1981 of the Civil Rights Act of 1866 ("section 1981"), 42 U.S.C. § 1981. The defendants filed separate motions to dismiss, ECF Nos. 19, 23, seeking to dismiss all claims against them under Fed. R. Civ. Pro. 12(b)(6), for failure to state a claim upon which relief may be granted. The court has reviewed the motions, Plaintiff's objections, ECF Nos. 31, 32, Defendants' reply thereto, ECF No. 37, and the record in this case. For the reasons discussed herein, the motions are **GRANTED IN PART** and **DENIED IN PART.**

## I.  __BACKGROUND__

Plaintiff,[1] is a black African American.  Compl. ¶ 31, ECF No. 1.  He started working for Defendants in or around January 2021 as a truck driver.[2]  *Id.* ¶ 21.  In or around November 2021, he sustained a back injury "on the job."  *Id.* ¶ 23.  Thereafter, his healthcare provider placed him on light duty work restrictions, and Defendants were so notified.  *Id.* ¶¶ 24–25.  While on light duty, Plaintiff worked as a dispatcher between November 2021 and November 2022.  *See id.* ¶¶ 26–28, 42.  Plaintiff alleges that he was qualified for the position and performed the job well.  *Id.* ¶¶ 29–30.

Plaintiff was harassed by coworkers due to his race both before and after his injury.  *See id.* ¶¶ 32–34, 41.  He describes his verbal harassment or intimidation by coworkers, though he does not provide dates of the incidents or names of those who harassed him.  *See id.*  As a truck driver, at least three different co-workers "used the 'N-word' at and about Plaintiff."  *Id.* ¶ 33.  One of them even "used to talk about lynchings and say how he was going to lynch [Plaintiff]."  *Id.* ¶ 34.  Once, a supervisor was present for such comments and told the offending co-worker to stop, which was effective only until the supervisor was no longer nearby, at which point the lynching comments resumed.  *Id.*  Plaintiff's coworkers did not speak up and defend him.  *Id.*  It is unclear whether Plaintiff was a truck driver or a dispatcher during several of the relevant allegations.

Plaintiff claims he was harassed at work because of his disability.  Following his injury, co-workers called him "Princess" because he was working a sedentary job due to his back injury.  *Id.* ¶ 36.  They also "mimicked' his back condition.  *Id.* ¶ 37.

---

[1] All factual assertions are taken from Plaintiff's SOF.

[2] Plaintiff alleges that he was employed by both Defendants, though Defendant R & L Carriers, Inc. claims that it did not employ him.  *Cf.*  Compl. ¶ 20, *with* ECF No. 23 at 2.

Plaintiff alleges that in September 2022, a co-worker took pictures of his Facebook page and "show[ed] them around the workplace in an effort to further harass Plaintiff." *See id.* ¶ 38.  Plaintiff does not specify whether this harassment was connected to his race or disability.

On or around September 24, 2022, Plaintiff filed a report with human resources, citing racial harassment by co-workers Charlie Valentine and Mark Daniels and requested intervention.  *Id.* ¶ 39.  Plaintiff claims that the human resources department told him that it "could do nothing," and subsequently, he continued to be "racially harassed and mocked because of his disability."  *Id.* ¶¶ 40–41.

On or around November 20, 2022, Plaintiff was taken off the dispatcher job without explanation and placed on a leave of absence while the workers' compensation process continued.  *See id.* ¶¶ 42–43.  Since then, Defendants have not assigned any work to Plaintiff, who has remained on a leave of absence.  *Id.* ¶¶ 45–46.

On or around December 9, 2022, Plaintiff filed claims with the Equal Employment Opportunities Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), naming Defendant R & L Carriers, Inc. as the respondent. *Id.* ¶ 48.  On or about July 26, 2023, Plaintiff claims that he amended his complaints with the CHRO and EEOC by adding Defendant Shared Services to each.[3]  *Id.* ¶ 58.  Plaintiff received a Release of Jurisdiction letter from the CHRO on February 16, 2024, and a Right to Sue letter from the EEOC on March 5, 2024.  *Id.* ¶¶ 59–60.

---

[3] Defendant Shared Services argues that Plaintiff never amended his EEOC charge to include it as a respondent. ECF No. 19-1 at 7.  In support, Defendant Shared Services submits a copy of the EEOC's Dismissal and Notice of Rights issued to Plaintiff, which only names R & L Carriers, Inc. as the respondent.  Ex. F, ECF No. 19-7.

## II.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Ashcroft*, 556 U.S. at 678 (internal citations and quotations omitted)).  Further, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## III.  <u>DISCUSSION</u>

In its motion to dismiss, Defendant R & L Carriers, Inc. does not substantively dispute employing Plaintiff, though it "reserves the right to seek dismissal of all claims against it on this basis."  *See* ECF No. 23-1 at 2 n.2.  Also, Defendants allege, but do not substantively argue, that Plaintiff has not filed proof that R & L Carriers, Inc. was served pursuant to Federal Rule of Civil Procedure 4(n).  ECF No. 19-1 at 1 n.1.  For present purposes, the court accepts that Defendant R & L Carriers, Inc. employed Plaintiff, and that Plaintiff has effectuated service of process on both Defendants.  *See* ECF No. 21.

### A. Exhaustion of Administrative Remedies

Defendant Shared Services argues that the court must dismiss the Title VII and ADA counts against it for failure to exhaust administrative remedies, because Shared Services is not a respondent in Plaintiff's EEOC charge. ECF No. 19-1 at 7–8.

Around December 9, 2022, Plaintiff filed EEOC claims against Defendant R & L Carriers, Inc. Compl. ¶ 48. Defendant Shared Services argues that he never amended his EEOC charge to include Shared Services as a respondent. ECF No. 19-1 at 7. In support, Shared Services submits a copy of the EEOC's Dismissal and Notice of Rights issued to Plaintiff, which only names R & L Carriers, Inc. as a respondent. Ex. F, ECF No. 19-7. Plaintiff disputes this, claiming that around July 26, 2023, he amended his EEOC charge, adding Defendant Shared Services. Compl. ¶ 58.

Ordinarily, a party not named in an EEOC right to sue letter may not be sued under Title VII or the ADA. *See Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 922 F. Supp. 943, 947 (S.D.N.Y. 1996) (citing *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 905 (7th Cir. 1981)). However, it is well-established that in the Second Circuit, courts take a "flexible stance" in interpreting Title VII's procedural requirements. *Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir.1976). The requirement that a party be named in an EEOC charge must be considered with its dual purpose in mind: "(1) it provides notice to the charged party of the alleged violation, and (2) it facilitates the primary goal of voluntary compliance." *Rivera*, 922 F. Supp. at 946–47. Courts have applied this logic when evaluating EEOC charges under the ADA, as well. *See Crosby v. McDonald's of Guilderland, LLC*, No. 1:17-CV-1160 (MAD/DEP), 2018 WL 2077884, at *9 (N.D.N.Y. May 2, 2018).

Plaintiff plausibly has alleged that Defendant Shared Services had actual knowledge of the EEOC claim on or around December 9, 2022. R & L Carriers, Inc. is Shared Services' "principal member," Compl. ¶ 5, and it was named in (and therefore notified of) Plaintiff's EEOC charge against it in December 2022, *id.* ¶ 48. R & L Carriers, Inc. has made clear that Plaintiff's connection to it is through Shared Services, *see* ECF No. 23-1 at 2, therefore it is reasonable to conclude that R & L Carriers, Inc. notified the latter about the EEOC charge in or around December 2022. *See Agugliaro v. Brooks Bros.*, 802 F. Supp. 956, 961 (S.D.N.Y. 1992) ("It seems likely that, as the parent of Brooks Brothers, Marks & Spencer p.l.c. would have been informed of the EEOC charge and would have been made aware of any resulting investigation.").

Additionally, treating Shared Services as named in the original EEOC charge would not frustrate the second purpose of facilitating voluntary compliance. Plaintiff does not allege there was an investigation or efforts at conciliation, therefore any attempts to conciliate were not thwarted by his failure to name Shared Services in the EEOC charge. *Rivera*, 922 F. Supp. at 948 (finding no interference with conciliation efforts because no efforts took place).

Drawing all reasonable inferences in Plaintiff's favor, and keeping in mind the dual purposes supporting the EEOC naming requirement, the court finds that Plaintiff did not exhaust his administrative remedies for his ADA and Title VII claims as to Defendant Shared Services.[4] *See Agugliaro*, 802 F. Supp. at 961; *see also Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 479–81 (E.D.N.Y. 2015).

---

[4] Plaintiff's Title VII claims against Shared Services are Counts One, Three, Five, and Eleven. His ADA claims against Shared Services are Counts Seven, Nine, and Thirteen.

### B. **Timeliness**

Defendant Shared Services argues that Plaintiff's hostile workplace claims against it under Title VII, the ADA, and the CFEPA, are time-barred because he did not file such EEOC and CHRO administrative charges by the filing deadline.  ECF No. 19-1 at 18.

Before filing a Title VII claim in federal court, a plaintiff must exhaust their administrative remedies.  *See Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)).  Among the requirements, a plaintiff must file an EEOC claim within 180 days of the alleged unlawful action.  *See* 42 U.S.C. § 2000e–5(e)(1).  However, in states in which a state or local agency has overlapping authority to address such claims, the filing deadline is extended to 300 days.  *See id.*; *see also E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 110 (1988) (internal citations omitted).  Connecticut has its own employment discrimination agency, the CHRO, therefore the 300–day filing deadline applies to Plaintiff's Title VII claims.  *See Rogers v. Makol*, No. 3:13-CV-946 JAM, 2014 WL 4494235, at *2 (D. Conn. Sept. 10, 2014) ("In Connecticut, an employee must file the charge with the EEOC within 300 days").

The 300-day deadline applies to the ADA and CFEPA claims as well.  The ADA explicitly incorporates the time limits established by Title VII, 42 U.S.C. § 12117(a), and the CFEPA requires a plaintiff file a charge within 300 days of the alleged discrimination.  Conn. Gen. Stat. § 46a-82(f)(1).

Plaintiff filed his CHRO and EEOC charges on December 9, 2022.  Compl. ¶ 48.  Therefore, any Title VII, ADA, and CFEPA claims for conduct before February 12, 2022, are time-barred.

Defendant Shared Services argues that, as to the counts brought against it, the correct filing date is July 26, 2023, when Plaintiff amended his EEOC and CHRO charges to include Shared Services. ECF No. 19-1 at 18. Thus, it argues that Plaintiff's hostile work environment claim is time-barred because "the latest the last act of 'harassment' could have taken place" was more than 300 days before July 26, 2023. *Id.* at 19.

The court disagrees. As discussed above, courts in the Second Circuit adopt a flexible approach to interpreting Title VII's procedural requirements. *See Egelston*, 535 F.2d at 754–55. Consistent with this approach, if a court finds that a later-added party not named in a timely EEOC complaint has an "identity of interest" with the original party, the claims against the later-added party will not be considered time-barred. *See Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 589 (S.D.N.Y. 2017). The identity of interest exception is consists of four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 590 (internal citations omitted).

The second and third factors, which are the "two most significant factors," favor Plaintiff. *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 787 (E.D.N.Y. 1999). As previously discussed, Shared Services suffered no prejudice because it likely received notice, and Plaintiff does not claim there were investigation or conciliation efforts. Most importantly, Defendants appear to share interrelated operations. First, R & L Carriers, Inc.'s

8

relationship with Plaintiff runs through Shared Services, and Plaintiff alleges both entities employ him.  *See* Compl. ¶¶ 19–20.  Second, Defendants' principal places of business are at the same address.  *See id.* ¶¶ 2–4.  "When 'two entities set forth a shared principal address ... [it] shows there may be common or interrelated aspects to their operations.'" *See Equal Emp. Opportunity Comm'n v. R&L Carriers, Inc.*, 664 F. Supp. 3d 784, 798 (S.D. Ohio 2023) (quoting *EEOC v. Care Ctrs. Mgmt. Consulting, Inc.*, 942 F. Supp. 2d 771, 779 (E.D. Tenn. 2013)).  Moreover, recently, the Southern District of Ohio concluded that R & L Carriers, Inc. and Shared Services are an "integrated enterprise" at the summary judgment stage in a separate Title VII lawsuit.  *See id.* at 798–99.  Drawing all reasonable inferences in Plaintiff's favor, the court finds that the defendants' interests are sufficiently similar to find the "identity of interest" test satisfied.  The December 9, 2022, filing date that applies to R & L Carriers, Inc. therefore also applies Shared Services, even though the latter was not named in the original charge.

Courts in the Second Circuit apply the identity of interest exception to ADA claims. *McDonald's of Guilderland, LLC*, 2018 WL 2077884, at *9.  In addition, Connecticut courts have applied this exception to CFEPA claims filed with the CHRO.  *See Malasky v. Metal Prods. Corp.*, 44 Conn. App. 446, 453–54 (1997).  Accordingly, Counts Eleven, Thirteen, Twenty-Five, and Twenty-Seven, are not time-barred.[5]

---

[5] Even if the court presumes the correct reference date is July 26, 2023, and the cut-off for timely claims would be September 29, 2022 (as Shared Services argues), Plaintiff's hostile work environment claims would survive.  A hostile work environment claim does not stem from a discrete act, it "involves repeated conduct."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Thus, it is irrelevant if "some of the component acts of the hostile work environment fall outside the statutory time period." *Mallison v. Connecticut Off. of Early Childhood*, 634 F. Supp. 3d 21, 33 (D. Conn. 2022) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115).  As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*  Plaintiff alleges that after reporting racial harassment to human resources on September 24, 2022, he continued to be "racially harassed and mocked because of his disability."

### C. **Disability Discrimination and Failure to Accommodate Claims**

The ADA and CFEPA prohibit employment discrimination on the basis of physical disability. 42 U.S.C. § 12112(a); Conn. Gen. Stat. § 46a–60(a). Plaintiff claims that Defendants discriminated against him because of his back condition and failed to make reasonable accommodations by allowing him to continue in the dispatcher position.

To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a person with a disability within the meaning of the ADA; (2) his employer is subject to the ADA and had notice of Plaintiff's disability; (3) that with or without reasonable accommodation, he was qualified to perform the essential functions of the job at issue; and (4) that he suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127,134 (2d Cir. 2008). Discrimination claims brought under the CFEPA "are construed similarly to ADA claims," therefore, the court will evaluate these counts simultaneously.[6] *Hopkins v. New England Health Care Emps. Welfare Fund,* 985 F. Supp. 2d 240, 255 (D. Conn. 2013). The only difference in analysis is that the "CFEPA's definition of physical disability is broader than the ADA's." *Id.* (quoting *Beason v. United Technologies*, 337 F.3d 271, 277–278 (2d Cir.2003)).

There is no dispute that Defendants are covered by the ADA and had notice of Plaintiff's disability. Also, Defendants do not substantively challenge that Plaintiff is disabled within the meaning of the ADA and CFEPA, therefore the court finds he disabled under the ADA for the purposes of these motions.

---

Compl. ¶¶ 39–41. The court may therefore conclude that the "last act" of harassment took place after September 2022, making the hostile work environment claims timely.

[6] The only difference in analysis is that the "CFEPA's definition of physical disability is broader than the ADA's." *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 255 (D. Conn. 2013) (quoting *Beason v. United Technologies*, 337 F.3d 271, 277–278 (2d Cir.2003)).

Defendants' chief argument is that Plaintiff was not "qualified" to perform the job at issue.  They claim Plaintiff cannot perform the essential functions of his pre-injury truck driving job because his medical certification from the Department of Transportation ("DOT") expired.[7]  ECF Nos. 19-1 at 13, 23-1 at 2.  Plaintiff concedes that he was and is "unable to perform the essential functions of the truck [driver] position," but counters that he is qualified to perform the dispatcher job.  *See* ECF No. 31 at 8.

This leaves the court with two inquiries.  First, whether Plaintiff's pre-injury truck driving position or the post-injury dispatcher position is the "job at issue" for the purposes of Plaintiff's ADA claim.  Second, whether the complaint states a claim that is plausible on its face that Plaintiff is qualified for the "job at issue."

To the first question, the text of the ADA explains that a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual *holds or desires*."  42 U.S.C. § 12111(8) (emphasis added).  Therefore, investigating whether an individual can perform the essential functions of a job "is not limited to the employee's existing job. Rather, the plain language of the statute includes an employee who has the ability to do other jobs within the company that such disabled person desires."  *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003) (quoting *Connolly v. Bidermann Indus. U.S.A., Inc.*, 56 F.Supp.2d 360, 366 (S.D.N.Y.1999)) (internal quotations omitted).

Defendants exclusively analyze whether Plaintiff was qualified for the truck driver position, not whether he was qualified for the dispatcher position.  But Second Circuit

---

[7] Under Federal Motor Carrier Safety Regulations ("FMCSRs"), commercial motor vehicle ("CMV") drivers must have a medical certification to be qualified to operate a CMV.  49 C.F.R. § 391.41(a)(1)(i).

caselaw supports the conclusion that the "job at issue" analysis need not be so limited; it may include the position Plaintiff seeks.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218 (2d Cir. 2001) (analyzing whether plaintiff was a qualified individual based on whether she could "perform the essential functions of the job she sought."); *see McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 99 (2d Cir. 2009) (analyzing whether the plaintiff was qualified for a position that she would be reassigned to).  Here, Plaintiff sought and continues to seek the dispatcher position.  Therefore, the court assesses whether Plaintiff states a claim that is plausible on its face that he could perform the essential functions of the dispatcher position.

Plaintiff claims he was placed in the dispatcher position by his employer, that he performed the job "for a period of time," and that he "performed the dispatch job well." Compl. ¶¶ 28, 30, ECF No. 1.  Plaintiff does not specify how long he performed the dispatcher job nor whether he received any performance reviews.  Yet at the motion to dismiss stage, the court finds that these factual assertions state a plausible claim that Plaintiff is qualified to perform the dispatcher job.

Defendants claim that allowing Plaintiff to continue working as a dispatcher would constitute a "promotion," not a "reasonable accommodation."  ECF No. 19-1 at 3 n. 3. Plaintiff disputes this.  ECF No. 31 at 14 ("Nowhere in [the] Complaint does [Plaintiff] assert that his re-assignment to the dispatcher job was a 'promotion'").  This is a material question of fact and at the motion to dismiss stage, the court must "accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).  Plaintiff claims the dispatcher job was an equivalent position to his pre-disability driver position, and not

a promotion.  *See* ECF No. 1 ¶¶ 27–30.  This is supported by his allegations that Defendant Shared Services reassigned him to work as a dispatcher without any evident additional training, and that Plaintiff performed "well" in this position.  *Id.* ¶¶ 28–30.

Drawing all reasonable inferences in Plaintiff's favor, the court concludes that the dispatcher position was not a promotion, and that Plaintiff was a qualified individual within the meaning of the ADA.

An employer's failure to accommodate an employee may constitute disability discrimination under the ADA and CFEPA.  *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 86 (D. Conn. 2006) ("Failure to accommodate a disability constitutes discrimination under the ADA"); *see Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008) ("[W]e adopt the commission's time-tested interpretation construing § 46a–60 (a)(1) to require employers to make a reasonable accommodation for an employee's disability").  As Plaintiff is a person with a disability within the meaning of the ADA, his employer was covered by the ADA and had notice of his disability, he was qualified to perform the essential functions of the dispatcher position, and there was an available dispatcher position from which he was removed, the court finds that Plaintiff presents a prima facie disability discrimination case under the ADA and the CFEPA for failure to accommodate.[8] *See McBride*, 583 F.3d at 97 (outlining a prima facie case for disability discrimination arising from a failure to accommodate).

---

[8] The court rejects Plaintiff's claim that his co-workers' name calling and mimicking his back condition constituted discrimination on the basis of his disability.  Compl.  ¶¶ 36–37.  "Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff."  *Hasemann v. United Parcel Serv. of Am., Inc.*, No. 3:11-CV-554 VLB, 2013 WL 696424, at *6 (D. Conn. Feb. 26, 2013).  Plaintiff has not established a nexus between his co-worker's insensitive behavior and his removal from the dispatcher position.  Therefore, this claim fails.

Defendant Shared Services argues that it is accommodating Plaintiff by placing him on a medical leave of absence "to allow him to potentially recover and return to his [truck driver] position."  ECF No. 19-1 at 13–14. The court acknowledges that "in some instances, providing medical leave" is a reasonable accommodation under the ADA.  *See Cousins v. Howell Corp.*, 113 F. Supp. 2d 262, 271 (D. Conn. 2000).  Medical leave for a finite period may be a reasonable accommodation if it allows the employee to later return to their position and perform the essential functions of their job, without placing an undue burden on the employer.  *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 204–05 (D. Conn. 2013); *Hutchinson v. Ecolab, Inc.*, No. 3:09CV1848 JBA, 2011 WL 4542957, at *9 (D. Conn. Sept. 28, 2011).

In this case, the court finds that indefinite medical leave is not a reasonable accommodation.  Plaintiff is a qualified individual who can perform the essential functions of the dispatcher position (Plaintiff's desired position).  Insisting upon an accommodation for a role Plaintiff does not seek, and one that he may never be able to perform again, leads the court to conclude that medical leave is not a reasonable accommodation in this case.  Moreover, Defendant Shared Services does not indicate how long the leave of absence is to last.  *See* ECF No. 19-1 at 13.  Courts have found that indefinite medical leave is not a reasonable accommodation, therefore, Defendant Shared Service's argument fails.  *Cousins*, 113 F. Supp. 2d at 271 (summarizing cases).

The court finds that Plaintiff's disability discrimination and failure to accommodate claims under the ADA and the CFEPA may proceed, but that his failure to accommodate claims are subsumed into his disability discrimination claims.  Thus, Count Nine is merged

into Count Seven; Count Ten is merged into Count Eight; Count Twenty-Three is merged

into Count Twenty-One; and Count Twenty-Four is merged into Count Twenty-Two.

### D. Race and Color Discrimination Claims

#### 1. *Title VII and CFEPA*

Title VII of the Civil Rights Act of 1964 and the CFEPA provides that it is unlawful

for an employer to discriminate against an employee because of that employee's race or

color.[9]  42 U.S.C.A. § 2000e-2; Conn. Gen. Stat. § 46a-60(b)(2).  Connecticut courts look

to federal law for guidance in evaluating discrimination claims under the CFEPA, therefore

the court shall apply the same standard of review to Plaintiff's Title VII and CFEPA claims.

*See Vasquez v. Claire's Accessories, Inc.*, 392 F.Supp.2d 342, 349 (D. Conn. 2005)

("CFEPA claims are analyzed in the same manner as Title VII employment discrimination

claims"); *See Proctor v. MCI Commc'ns Corp.*, 19 F. Supp. 2d 11, 14 n.1 (D. Conn. 1998)

(applying the same standard of review to the plaintiff's Title VII and CFEPA claims).

"Title VII prohibits both intentional discrimination (known as 'disparate treatment')

as well as, in some cases, practices that are not intended to discriminate but in fact have

a disproportionately adverse effect on minorities (known as 'disparate impact')."  *Ricci v.*

*DeStefano*, 557 U.S. 557, 577 (2009).  Though Plaintiff does not explicitly state that he

brings a disparate treatment claim, his allegations plainly fall into that category.

---

[9] Race discrimination and color discrimination claims are "of the same type and character."  *See Baker v. CT Transit*, No. 3:18-CV-01534 (MPS), 2020 WL 7129581, at *4 (D. Conn. Dec. 4, 2020) (citing *Clements v. St. Vincent's Hosp. & Med. Ctr. of New York*, 919 F. Supp. 161, 164 (S.D.N.Y. 1996)).  The allegations that support Plaintiff's color discrimination claims substantially overlap with those that support his race discrimination claim.  *See* Compl.  Accordingly, the court's evaluation of Plaintiff's color discrimination claims under Title VII and the CFEPA is encompassed by its analysis of his corresponding race discrimination claims.  *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 180–81 (S.D.N.Y. 2009) (evaluating plaintiff's race and color discrimination claims simultaneously).

The Supreme Court of the United States, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), established a burden-shifting scheme for discriminatory-treatment cases and the elements of a prima facie claim.  *See McDonnell Douglas* at 802–03.  To establish a prima facie case of racial discrimination under Title VII, Plaintiff must show the following elements: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003) (internal citation omitted).  In the Second Circuit, a plaintiff's burden for establishing a prima facie case for disparate treatment is de minimis.  *Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 197 (D. Conn. 2020) (citing *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005)).

Plaintiff establishes the first three elements of a prima facie Title VII disparate treatment claim.  He is a member of a protected class because he is African American and black, Compl. ¶ 31, and the court has concluded he was qualified for the dispatcher position.  He suffered an adverse employment action because he was removed from the dispatcher position and was placed on a leave of absence.  *See id.* ¶ 42.  But whether Plaintiff has met his burden to show that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent is less apparent.

Defendants argue that Plaintiff "does not plead facts creating an inference that his race (African American) . . . played any role in relation to an adverse employment action." ECF No. 19-1 at 16; *see also* ECF No. 23-1 at 3.  They argue that Plaintiff "has not[] and cannot" allege that the coworkers who said racial epithets to and around Plaintiff "had any

control over the terms and conditions of his employment," including his transition from the dispatcher position to a leave of absence. ECF No. 19-1 at 16–17.

Plaintiff argues that the abusive comments said to and around him created a "discriminatory atmosphere," which supports a plausible inference of discriminatory intent. ECF No. 31 at 28. He also argues that at the motion to dismiss stage, the court should view his claim "in light of the plaintiff's minimal burden to show discriminatory intent." *See id.* at 27 (quoting *Littlejohn*, 795 F.3d at 311).

The court agrees. At the pleading stage, an "allegation of facts supporting a *minimal* plausible inference of discriminatory intent suffices ... because this entitles the plaintiff to the temporary presumption of *McDonnell-Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Accenture PLC*, 511 F. Supp. 3d at 197–98 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)) (emphasis added). Plaintiff alleges that his coworkers talked about lynchings around him, that he experienced "racial tensions," and that he was "racially harassed" at work. *See* Compl. ¶¶ 34, 39, 41. At this stage, these allegations are sufficient to allow an inference discriminatory intent, without evidence that the perpetrators had control over Plaintiff's employment. *See Cartagena-Cordero v. R&L Carriers Shared Servs., LLC*, No. 3:24-CV-218 (VAB), 2024 WL 4803466, at *14 (D. Conn. Nov. 15, 2024) (finding the plaintiff satisfied his burden even though he did not show a relationship between racial epithets from coworkers and an adverse employment action). Though Plaintiff does not identify all of the coworkers who harassed him, or the dates of these incidents, the court "need not decide if his allegations actually create a genuine issue of material fact at this time." *See*

*id.* (citing *Mauro v. New York City Dep't of Educ.*, No. 21-2671, 2022 WL 17844438, at *1 (2d Cir. Dec. 22, 2022)).

Because Plaintiff has made a prima facie case of race and color discrimination, the court finds that these claims may proceed.

### 2. *Section 1981*

To establish a prima facie case of racial discrimination under 42 U.S.C. Section 1981, Plaintiff must show the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendants' intent to discriminate on the basis of race; and (3) the discrimination concerned one of the statute's enumerated rights.  *Underwood v. RTX Corp.*, No. 3:23-CV-310 (SVN), 2024 WL 3988142, at *4 (D. Conn. Aug. 29, 2024) (citing *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000)).

Plaintiff's burden to present a prima facie case of discrimination under Section 1981 is higher than under Title VII.  To pursue a Title VII claim, the plaintiff must only allege circumstances giving rise to a "minimal plausible inference" of discriminatory intent. *Accenture PLC*, 511 F. Supp. 3d at 197–98.  In contrast, to pursue a Section 1981 claim the plaintiff must "giv[e] rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994); *see Underwood*, 2024 WL 3988142, at *4 ("a plaintiff . . . must plausibly allege that the defendant specifically intended to discriminate on the basis of race").  Further, a plaintiff pursuing a Section 1981 claim must plead that race was a "but-for cause" of the defendant's actions. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) (to prevail on a Section 1981 claim "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right").

There is no meaningful dispute that Plaintiff is a racial minority and that Defendants' actions concerned an enumerated category under Section 1981.  The central dispute is whether Plaintiff adequately pleaded that Defendants had the intent to discriminate based on race.

Defendant Shared Services argues that Plaintiff failed to plausibly allege that his race was the but-for cause of his removal from the dispatcher position, and the court agrees.  ECF No. 19-1 at 18.  Plaintiff's coworkers talked about lynchings around him, and he was otherwise "racially harassed" at work.  Compl. ¶¶ 34, 41.  While allegations of racially discriminatory comments "are a recognized method of establishing discriminatory intent," *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014), Plaintiff does little (if anything) to argue that his race was the "but-for" cause of Defendants' actions.

Plaintiff's pleadings meet the de minimis standard under Title VII, but not the higher requirements of Section 1981.  Thus, Counts Twenty-Nine and Thirty are dismissed.

### E.  Hostile Work Environment Claims

#### 1.  *ADA and CFEPA*

To establish a hostile work environment claim under the ADA, a plaintiff must establish the following: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (internal citation and quotations omitted).  The target must subjectively perceive the conduct as abusive, and the conduct must also be "severe or pervasive enough to create an objectively hostile or

abusive work environment." *Id.* When considering whether a plaintiff has met this burden, courts evaluate "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Lastly, a plaintiff must show that "[he] was subjected to the hostility because of [his] membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

The parties do not dispute that Plaintiff subjectively believed the work environment was abusive. The question as to these claims is whether Plaintiff's coworkers' comments and behavior *related to his injury* created an objectively hostile work environment.

In support of his argument, Plaintiff claims that coworkers "mimicked [his] back condition" and called him "'Princess' because he [was] working a sedentary job because of his back injury." Compl. ¶¶ 35–37. He also claims that "one employee started taking pictures off [his] private Facebook page and was showing them around the workplace in an effort to further harass [him]," however, Plaintiff does not specify whether this harassment was due to his race, color, or disability. *See id.* ¶ 38.

The court finds that the conduct described is not sufficiently severe to support a hostile work environment claim. First, on the limited facts alleged, the court cannot conclude that the distribution of Facebook pictures was connected to Plaintiff's disability, so it will not factor it into its analysis. Second, while the name calling and mimicry Plaintiff describes is no doubt insulting, "[s]imple teasing, offhand comments, and isolated incidents ... will not amount to discriminatory changes in the terms and conditions of

employment sufficient to meet the threshold of severity or pervasiveness." *Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 150 (D. Conn. 2008) (internal citation omitted).

To argue a hostile work environment claim under the CFEPA, a plaintiff must meet a similar standard, showing that the offensive conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Payne v. PSC Indus. Outsourcing, Ltd. P'ship*, 139 F. Supp. 3d 536, 549 (D. Conn. 2015). For the foregoing reasons, the court finds that Plaintiff has not satisfied his burden under the CFEPA either.

Thus, the court dismisses Counts Thirteen, Fourteen, Twenty-Seven, and Twenty-Eight.

## 2. *Title VII and CFEPA*

To establish a hostile work environment claim under Title VII, a plaintiff must show: "(1) harassment that was sufficiently severe or pervasive to alter the conditions of her employment, creating an abusive working environment, and (2) a sufficient basis for imputing the conduct that created the hostile environment to her employer."[10] *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (internal citation omitted). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002) (internal citation omitted). Similar to a hostile work environment claim under the ADA, there is a subjective and objective element: "the misconduct shown must be 'severe or pervasive enough to

---

[10] A CFEPA hostile work environment claim is analyzed "in the same manner as one brought under Title VII." *Flowers v. N. Middlesex YMCA*, No. 3:15-CV-705 (MPS), 2016 WL 1048751, at *2 (D. Conn. Mar. 11, 2016) (citing *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 242 (D. Conn. 2008)). Therefore, the court will evaluate Plaintiff's CFEPA and Title VII counts simultaneously.

create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *See id.* at 374 (quoting *Harris*, 510 U.S. at 21).

As noted earlier, it is irrelevant if "some of the component acts of the hostile work environment fall outside the statutory time period." *Mallison v. Connecticut Off. of Early Childhood*, 634 F. Supp. 3d 21, 33 (D. Conn. 2022) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115). A hostile work environment claim "is not a discrete act but, rather, 'involves repeated conduct.'" *Id.* (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115). As long as an act "contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Plaintiff alleges that he was "racially harassed" after he filed a complaint with human resources on September 24, 2022, which falls squarely within the statutory period. Compl. ¶¶ 39–41. Thus, the court may consider conduct contributing to the hostile work environment claim that took place prior to February 12, 2022.

The court finds that Plaintiff has met his burden. Once again, the parties do not dispute that Plaintiff subjectively believed the work environment was abusive. Turning to the objective element, the allegations of racial epithets uttered around and at Plaintiff demonstrate that racial harassment was severe and pervasive. Plaintiff was subject to racial harassment in two different roles over the course of many months. *See* Compl. ¶¶ 33–41. Plaintiff was the target of degrading language when at least three different co-workers "used the 'N-word' at and about Plaintiff." *Id.* ¶ 33. Moreover, Plaintiff was threatened with physical violence when one coworker said "he was going to lynch [Plaintiff]." *Id.* ¶ 34. The "racial tensions," *id.* ¶ 39, Plaintiff was subject to constitute

severe and pervasive harassment. *See Williams v. Serv. Truck Ctr.*, No. 118CV1430MADCFH, 2019 WL 2314559, at *2 (N.D.N.Y. May 31, 2019) (finding coworkers' use of the "n-word" at and around the plaintiff and placement of a noose in the plaintiff's locker constituted severe and pervasive harassment). These claims support the conclusion that Plaintiff was subject to an objectively hostile work environment.

In addition, the court may impute responsibility to Plaintiff's employer for his coworkers' conduct. When a co-worker without supervisory authority harasses a plaintiff, "liability will be imputed to the employer only if it is negligent, that is, if it . . . knew of the harassment but did nothing about it." *Delta Air Lines, Inc.*, 277 F.3d at 136 (internal quotations and citation omitted). Here, Plaintiff alleges that his employer was aware of the racial harassment and took no action. On September 24, 2022, he filed a complaint with human resources, but human resources "concluded that it could do nothing" about the harassment. Compl. ¶¶ 30–40. In another instance, a supervisor was present while Plaintiff was harassed by a co-worker and temporarily put a stop to it, but the abuse ultimately continued when the supervisor was not around. *Id.* ¶ 34.

Plaintiff has met his burden; therefore, the Title VII and CFEPA hostile work environment claims may proceed.

### F. Retaliation Claims

To establish a prima facie case of retaliation under Title VII, Plaintiff must establish the following: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). The elements of a retaliation claim under

the CFEPA and 42 U.S.C. § 1981 are the same as for a retaliation claim under Title VII, therefore the court will evaluate these counts simultaneously. *Gray v. Minnesota Mining & Mfg. Co.*, 732 F. Supp. 3d 184, 193 (D. Conn. 2024) ("The elements of a claim of retaliation under § 46a–60(a)(4) are the same as for a retaliation claim under Title VII." (internal citation omitted)); *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988) ("The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII.").

As with discrimination claims, retaliation claims under Title VII are subject to the *McDonnell Douglas* burden-shifting framework. Accordingly, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 517 (E.D.N.Y. 2019) (citing *Littlejohn*, 795 F.3d at 316).

First, Plaintiff argues that he engaged in a protected activity by reporting racial harassment to his employer's human resources department, and that his employer was therefore aware he engaged in a protected activity. Compl. ¶ 39. Defendants do not challenge that Plaintiff's complaint was a protected activity, nor do they dispute that Plaintiff's employer was aware of it, therefore the court finds that Plaintiff satisfied the first two elements of a retaliation claim.

Turning to the third element, a materially adverse change in the conditions of a plaintiff's employment might be characterized by "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. New York City Bd. of Ed.*, 202 F.3d 636, 640

(2d Cir. 2000) (abrogated on other grounds). Plaintiff alleges that Defendants removed him from the dispatcher position and placed him on a leave of absence on or about November 20, 2022. Compl. ¶ 42. Since then, "Defendants have refused to assign [P]laintiff work." *Id.* ¶ 43. This change eliminated all of Plaintiff's responsibilities and caused him to "lose wages and income." *See id.* ¶¶ 45–47. Because loss of wages, loss of income, and removal from a desired job posting could reasonably "dissuade a reasonable worker from making or supporting a charge of discrimination," the court finds that Plaintiff's removal from the dispatcher position was a materially adverse change. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 363 (S.D.N.Y. 2006) (finding "suspension and delay in return to work" qualify as an adverse employment action).

Turning to the fourth element, Defendant argues that Plaintiff does not "identify evidence that the individuals who made the decision to place him on leave were motivated by unlawful discrimination or retaliation."[11] ECF No. 19-1 at 3; ECF No. 23-1 at 3. A causal connection between a protected activity and an adverse action can be shown "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*, 697 F. Supp. 3d 112, 123 (S.D.N.Y. 2023); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). In the Second Circuit, there is not a "bright line" defining how close in time a

---

[11] Defendants also argue Plaintiff's retaliation claims should be dismissed because his first EEOC charge does not advance a retaliation claim. ECF No. 19-1 at 7. However, the United States Court of Appeals for the Second Circuit has held that a court may have jurisdiction over claims not asserted before the EEOC "if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). Here, Plaintiff's retaliation claims are reasonably related to his discrimination claims because they "fall within the reasonably expected scope of an EEOC investigation" of his discrimination claims. *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) ("This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel." (internal quotations and citation omitted)).

protected activity and an adverse must take place.  *See McCall v. Genpak, LLC*, No. 13-CV-1947 KMK, 2015 WL 5730352, at *22 (S.D.N.Y. Sept. 30, 2015).  At the motion for summary judgment stage, courts have found that "fact finders could draw temporal inferences from gaps between protected action and adverse employment actions of three months or, indeed, much longer."  *Id.*  Here, Plaintiff claims his removal as a dispatcher took place less than two months after he filed a complaint about racial harassment. Compl. ¶ 39–42.  On this basis, the court finds that Plaintiff has alleged sufficient facts to support an inference of causation.

Plaintiff has met his de minimis burden, therefore, his retaliation claims under Title VII, the CFEPA, and Section 1981 may proceed.


IV.    **CONCLUSION**

For the reasons discussed herein, it is **ORDERED:**

1. Defendants' Motions to Dismiss (ECF No. 19 and ECF No. 23) are **GRANTED in part** and **DENIED in part.**

    a.  Plaintiff's failure to accommodate claims are encompassed by his disability discrimination claims, therefore Plaintiff's counts are consolidated as follows: Count Nine is merged into Count Seven; Count Ten is merged into Count Eight; Count Twenty-Three is merged into Count Twenty-One; and Count Twenty-Four is merged into Count Twenty-Two.

    b.  The Motions are granted with respect to Count Thirteen, Count Fourteen, Count Twenty-Seven, Count Twenty-Eight, Count Twenty-Nine and Count Thirty.

c.  The Motions are denied with respect to Count One, Count Two, Count Three, Count Four, Count Five, Count Six, Count Seven, Count Eight, Count Eleven, Count Twelve, Count Fifteen, Count Sixteen, Count Seventeen, Count Eighteen, Count Nineteen, Count Twenty, Count Twenty-One, Count Twenty-Two, Count Twenty-Five, Count Twenty-Six, Count Thirty-One, and Count Thirty-Two.

**IT IS SO ORDERED** in Hartford, Connecticut, this 9th day of March, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE